**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MONIQUE HERNANDEZ,

               Plaintiff,

v.

CITY OF BEAUMONT,

               Defendant,

-------------------------------------------

CITY OF BEAUMONT,

               Third-party-plaintiff-
               Appellant,

  v.

PIEXON AG; BART BACOLINI,
Erroneously Sued As Barton Peter
Bacolini,

               Third-party-defendants-
               Appellees,

  and

No.   16-56689

D.C. No.
5:13-cv-00967-DDP-DTB

MEMORANDUM[*]

---

     [*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

IBS SIGMA, INC.,

Third-party-defendant.

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted June 4, 2018
Pasadena, California

Before: FISHER and OWENS, Circuit Judges, and MOLLOY,[**] District Judge.

The City of Beaumont appeals from the district court's summary judgment order in favor of Piexon AG and Bart Bacolini.[1] We have jurisdiction under 28 U.S.C. § 1291, and we review a grant of summary judgment de novo. *See Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 777 (9th Cir. 2014) (en banc). We affirm.

The City brings product defect claims arising from a police stop, during which one of its officers, Enoch Clark, permanently blinded Monique Hernandez by deploying Piexon's JPX Jet Protector pepper spray gun approximately one foot

_____

[**] The Honorable Donald W. Molloy, Senior Judge, United States District Court for the District of Montana, sitting by designation.

[1] The parties agree the summary judgment decision was intended to dispose of all claims against all served parties, and the district court's judgment is therefore final.

2

from her head. A manufacturing, design or warning defect "does not become an issue for the jury . . . unless causation is first established." *Browne v. McDonnell Douglas Corp.*, 698 F.2d 370, 371 n.1 (9th Cir. 1982). On the facts of this case, a jury could not reasonably infer that the JPX's alleged defects or Piexon's representations about the device substantially contributed to Hernandez's injuries. *See Endicott v. Nissan Motor Corp.*, 141 Cal. Rptr. 95, 100–01 (Ct. App. 1977) (where the plaintiff's operation of his car "was the overriding cause of the serious accident" that injured him, no expert could testify that the rupture of his seatbelt contributed to his injuries).

1.     The City argues the JPX is defectively manufactured because it deploys above its advertised velocity of 590 feet-per-second, and from there it is "a matter of simple physics" that "[i]ncreased velocity results in increased kinetic energy at impact." There is, however, no evidence either that Officer Clark's JPX deployed at a velocity above the advertised 590 feet-per-second or that, if it did, the additional velocity substantially contributed to Hernandez's injury as compared to a liquid payload deploying at the advertised velocity from the same distance. The City's expert testified he did not know whether Hernandez would have suffered identical injuries had the JPX performed at the same velocity represented in its user manual and safety materials. *See Stephen v. Ford Motor Co.*, 37 Cal.

3

Rptr. 3d 9, 16–17 (Ct. App. 2005) (where expert testimony was speculative, it could not constitute substantial evidence in support of causation).

2.      The City argues the JPX is defectively designed because it deploys its payload at velocities high enough to incapacitate a person from a distance, but, during intense police encounters at close proximity, can severely injure or kill a target. This is a core function of the JPX, which is marketed as a mid-range "less lethal" weapon for use between five and 23 feet, but not at close range. Although the City's argument — that the JPX should be able to deploy from shorter ranges with less impact to a target — is facially reasonable, the City has failed to show the JPX's design substantially contributed to Hernandez's injuries in this case. Given the substantial evidence that Officer Clark was repeatedly warned about the severe danger of deploying the JPX from close range, combined with the fact that Officer Clark nonetheless deployed the JPX in the forbidden manner, a jury could not reasonably attribute Hernandez's injury to the JPX's design rather than to Officer Clark's independent decisionmaking.

3.      The City also argues Piexon failed to warn of the particular danger of the JPX, instead providing generalized, vague warnings of "serious injury." There is no evidence, however, that stronger warnings would have altered Officer Clark's conduct or use of the device. *See Motus v. Pfizer, Inc.*, 358 F.3d 659, 661 (9th Cir.

4

2004); *Ramirez v. Plough, Inc.*, 863 P.2d 167, 177 (Cal. 1993) (holding there was "no conceivable causal connection" between the inadequate warning and the plaintiff's injury where the warning was in a language the plaintiff did not speak or read); *cf. Bunch v. Hoffinger Indus., Inc.*, 20 Cal. Rptr. 3d 780, 799–800 (Ct. App. 2004) (reviewing testimony from multiple witnesses suggesting a more forceful warning on a swimming pool liner would have prevented a child from diving in and suffering paralysis). The City does not dispute that Officer Clark received training on the specific uses of the JPX and knew close-range deployment could cause serious eye injuries, as Piexon's materials warned. Thus, even assuming Piexon's warnings were not sufficiently specific, they are not legally inadequate absent evidence that Clark would have acted differently with more specific information.

4. Similarly, even if Piexon's representations about velocity and kinetic impact are both false and material, there is no evidence that Officer Clark relied on those representations. Unlike in *Hauter v. Zogarts*, 534 P.2d 377, 381–83 (Cal. 1975), where the injured plaintiff testified that he relied on the safety assurances of the manufacturer, there is no evidence Officer Clark read the JPX user manual, and the user presentation from his five-hour training course never mentions the "kinetic impact" of the device. *See* Rest. 2d of Torts § 402B cmt.j.

5

5.     The City objects to Piexon's use of certain evidence that may be inadmissible at trial under the Public Safety Officers Procedural Bill of Rights (POBRA), Cal. Gov't Code §§ 3300–13.  Neither we nor the district court relied on that evidence, and we therefore leave the district court's evidentiary ruling undisturbed.

**AFFIRMED.**